IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

IN ADMIRALTY

CHANDRA STRAW,

    Plaintiff,

v.                                       CASE NO.: 5:11cv102 RS/CJK

AQUATIC ADVENTURES
MANAGEMENT GROUP, INC.
d/b/a AQUATIC ADVENTURES,
a Florida Corporation, and
JOHN DOE, an individual employee
of Aquatic Adventures Management Group Inc.,

    Defendants.

_____/

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION</u>**
**<u>TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

    Plaintiff CHANDRA STRAW files this Response in Opposition to Defendant's Motion for Summary Judgment (DE 21) together with the attached Affidavit, supporting exhibits and her Statement of Disputed Material Facts filed concurrently herewith.

    Defendant AQUATIC ADVENTURES MANAGEMENT GROUP, INC. d/b/a AQUATIC ADVENTURES ("Aquatic Adventures") raises two (2) arguments in favor of summary judgment:

    1.    First, Defendant erroneously contends that the release Plaintiff signed prior to participating in a jet ski dolphin tour relieves Defendant of liability. (DE 21 at p. 2). There is a genuine issue as to the enforceability and validity of the release. The release is unenforceable as against public policy because Aquatic Adventures violated Florida statutory laws enacted to protect jet ski renters such as the Plaintiff.  Further, the release does not apply to the actual events and reckless acts of Defendant which were so materially different from the dolphin tour in which Plaintiff originally agreed to participate, that the release is rendered invalid.

2. Second, as an alternative theory, Defendant argues that it complied with provisions of the Florida statutory laws governing safety regulations for personal watercraft liveries. Instead, the record shows that Defendant violated multiple provisions of Florida Statutes Section 327.01 *et seq.*, and specifically §§327.54(1)(e), 327.54(4)(b) and 327.30. There are genuine issues of material fact as to the extent of Defendant's statutory violations.

## INCORPORATED MEMORANDUM OF LAW

### STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Summary judgment is only appropriate when the record evidence indicates that there are no genuine issues of material fact that must be decided at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 320, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If an issue of fact is a legal element of the claim under the applicable substantive law which might affect the outcome of the case, then it is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510 (1986). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence to determine the truth of the matter, rather it is to determine whether a genuine issue of fact exists for trial. Anderson, 477 U.S. at 249, 106 S.Ct. 2510 at 2510.

The moving party bears the initial burden of showing that there are no genuine issues of material fact that should be decided at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). Only after the movant meets the initial burden, does the burden shift to the non-moving party to "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* The nonmovant must then "come forward with 'specific facts showing that there is a genuine issue for trial.'" Davis v. Panama City, Fla., 510 F.Supp.2d 671, 680 (N.D. Fla. 2007) citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)(quoting Fed.R.Civ.P. 56(e)). The Court must view the evidence in the light most favorable to the nonmoving party. *Id.* citing Adickes v. S.H. Kress &

Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609 (1970)("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor").

"If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992)(citing Mercantile Bank & Trust Co. v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

As shown below, there are genuine issues of material fact regarding the extent of Aquatic Adventures' numerous statutory violations. The deposition testimony of Aquatic Adventures' representatives corroborated Plaintiff's version of the events, and indicates that the Defendant recklessly deviated not only from Florida law, but from its own policies and procedures. Likewise, Defendant disputes the facts alleged by Plaintiff regarding her expectations of the dolphin tour. These issues preclude summary judgment and Defendant's Motion must be denied.

## SUMMARY

**The release does not preclude Plaintiff from recovery under any theory asserted by Defendant.** Defendant Aquatic Adventures' first argument is that the release is valid and relieves Aquatic Adventures of liability. (DE 21:4) Plaintiff contends that the release is unenforceable and invalid. Second, Defendant argues that it complied with Florida statutes §§327.54(1)(e), 327.54(4)(b) and 327.30 governing businesses such as Defendant who rent jet skis, or personal watercraft ("PWC"), to the public. (DE 21:7) Plaintiff shows herein that Defendant did not comply with said statutes, which in turn renders the release unenforceable. Both of Defendant's arguments fail since there are genuine issues of material fact in the record concerning the following issues:

I)   Whether the release is unenforceable as a matter of law based on Defendant's violations of Florida statutory law;

II)  Whether Defendant's actions violated of Fla. Stat. §327.54 (instruction and supervision) and Fla. Stat. §327.30 (requirement to render aid);

II)  Whether the release was rendered invalid when Defendant impermissibly exceeded the scope of the tour beyond what was contemplated by Plaintiff and when Defendant recklessly breached its duty of reasonable care in violation of its own policies.

I.      THE RELEASE IS UNENFORCEABLE AS A MATTER OF LAW

Under Florida law, it is contrary to public policy to enforce a release under circumstances where the releasee violated statutory law designed to protect the releasor.  Statutory violation of this kind is negligence per se, and thus it cannot be waived. Torres v. Offshore Professional Tour, Inc. 629 So.2d 192 (Fla. 3d DCA 1993).  "Negligence per se arises from violation of any statute establishing a duty to take precautions to protect a particular class of persons from a particular injury or type of injury."  Torres at 193 citing, DeJesus v. Seaboard Coast Line R.R. Co., 281 So.2d 198, 201 (Fla. 1973).   In Torres v. Offshore Professional Tour, Inc. 192, (Fla. 3d DCA 1993), the court held that the releases signed by a boater prior to a boat race were unenforceable where the race organizer violated Fla. Stat. §327.48 requiring that a race organizer provide "adequate protection to the participants." 629 So.2d at 194.

Florida law is replete with cases upholding unenforceability of releases as against public policy in instances of statutory violations ("negligence per se"). *See* JM Family Enterprises, Inc. v. Winter Park Imports, Inc., 10 So.3d 1133 (Fla. 5th DCA, 2009)(affirmed per curiam, citing Torres; John's Pass Seafood Co.; Loewe v. Seagate Homes, Inc., 987 So.2d 758, 760 (Fla. 5th DCA 2008)(release or exculpatory clause that attempts to prospectively insulate a party from liability for violating a statute or ordinance enacted to protect the public is generally unenforceable as against public policy); VoiceStream Wireless Corp. v. U.S. Comm., Inc. 912 So.2d 34, 38 (Fla. 4th DCA 2005) ("a party cannot waive liability imposed by statutory provisions that are intended to protect both an individual and the public…to do so would be contrary to public policy"); Holt v. O'Brien Imports of Fort Meyers, Inc. 862 So.2d 87, 87 (Fla. 2d DCA 2003)("[A]n individual cannot waive the protection of a statute that is designed to protect both the public and the individual.")(quoting Coastal Caisson Drill Co. v. Am. Cas. Co., 523 So.2d 791, 793 (Fla.2d DCA 1988), approved, 542 So.2d. 957 (Fla. 1989).

Federal courts have applied Florida law to determine whether a release is unenforceable under Florida's public policy rule.  Recently, in Tassinari v. Key West Water Tours, L.L.C., 2007 WL 1879172 (S.D. Fla. June 27, 2007), the Southern District of Florida held in a slip opinion that the exculpatory provisions in a jet-ski rental agreement were against public policy. Tassinari also involved the violation of the Florida statutes governing personal watercraft liveries.  Specifically, Tassinari successfully argued that Fla. Stat. §§327.54(1)(e) and (4)(b)

required jet-ski tour guides to have completed certain boater safety courses, and because the Defendant had not done so, it violated Florida law. In invalidating the exculpatory language, the Southern District Court reasoned that the safety obligation created by the statute was an obligation owed to the public at large, and it was therefore not within the power of a private individual to waive. Specifically, the Court noted that provisions in a release and waiver agreement "are invalid as against public policy when applied to liability arising out of violation of these statutes." See page 9 of Tassinari Order attached hereto as Exhibit A. See also Knarr v. Chapman School of Seamanship, 2000 WL 1886577 (E.D. Pa. 2000) ("Under Florida law, negligence *per se* is established if there is 'a violation of any ….statute which establishes a duty to precautions to protect a particular class of persons from a particular injury or type of injury.").[1]

Here, as in Torres and Tassinari, Defendant violated of Florida law which was established to protect a particular class of persons from injury. Specifically, Aquatic Adventures violated Fla. Stat. §§327.54 and 327.30 which regulate personal watercraft liveries and dictate mandatory minimum safety procedures they must follow to protect personal watercraft renters such as the Plaintiff.  Thus, the release is unenforceable as a matter of law.

Separately, all of the cases cited by Defendant are inapplicable to this case. First, In re: Complaint of Royal Caribbean Cruises Limited, 403 F.Supp.2d 1168 (S.D. Fla. 2005) held that language in a Royal Caribbean release was "clear and unambiguous" and thus was valid to preclude recovery for negligent infliction of emotional distress alleged by the adult plaintiff. However, it was not enforceable against the minor child plaintiff whose father signed the release. A third issue concerning Royal Caribbean's internal policy of not renting PWCs to minors was resolved in favor of the defendant since Defendant submitted an unrebutted Affidavit stating the third renter was indeed 18 years of age.  In contrast to the present case, plaintiffs in Royal Caribbean did not allege any violations of Florida statutory law. Thus, Defendant's reliance on the case is misplaced.

Defendant also relies on Waggoner v. Nags Head Watersports, Inc., 141 F. 3d 1152 (4th Cir. 1998)(unpublished).  An unpublished opinion from outside the 11th Circuit is not binding on this Court, and should be disregarded.  Nonetheless, the facts and concepts in Waggoner are

---

[1] In Knarr, the court examined the specific facts regarding sailboat ladder requirements and held that the defendant had not violated a Florida statute.

distinguishable and therefore not applicable to this case. The 4th Circuit found there were no violations of North Carolina boating safety laws and therefore the release was enforceable to preclude recovery for plaintiff's jet ski accident in North Carolina. Conversely, the Defendant herein did violate Florida vessel statutes enacted specifically to protect jet ski renters.

Defendant finally cites Edward Leasing Corp. v. Uhlig & Associates, Inc., 785 F.2d 877 (11th Cir. 1986) which concerns a breach of maritime contract to repair two main engines of a yacht; thus, the case does not apply either factually or legally the instant personal injury case. Most importantly, none of the cases relied on by Defendant relate to a violation of a statutory duty under Florida law.

The law cited by Plaintiff CHANDRA STRAW is applicable to the facts of this case and it is well settled that a violation of a specific Florida statute, enacted to prevent foreseeable harm to persons the legislature seeks to protect renders the release in this case unenforceable.

## II. DEFENDANT VIOLATED FLORIDA LAW GOVERNING VESSEL SAFETY AND SAID VIOLATIONS PROXIMATELY CAUSED PLAINTIFF'S INJURIES AND SUFFERING

In support of its motion, Defendant submits brief excerpts of Plaintiff's deposition, (DE:21-1), and Affidavit of the President of Aquatic Adventures (DE 21-2), and a report prepared by an expert, Kevin C. Breen (DE 21). Save for Plaintiff's deposition, *the evidence presented by Defendant consists of only general opinions*. Defendant has not produced any eye witnesses or record evidence to refute Plaintiff's specific testimony about the events and the accident on September 23, 2010.

Defendant grossly mischaracterizes the law as requiring only "that a company that leases a personal watercraft must provide an employee who has completed a boater safety course to train the renters about the safe operation of a personal watercraft". (DE 21:8). In fact, the law requires much more as discussed herein. Defendant's factual contentions are disputed by Plaintiff and there is a genuine issue between the parties as to whether Defendant complied with the statutory duties required by Fla. Stat. §§327.54 and 327.30.[2]

---

[2] Plaintiff does not address Defendant's other statutory violations which were not included in its Motion.

A.   **FLA. STAT. §§327.54(1)(E) AND 327.54(4)(B) REQUIRE INSTRUCTION AND SUPERVISION.**

Fla. Stat. §§327.54(1)(e) provides in relevant part:

"A livery may not knowingly lease, hire, or rent a vessel to any person…unless the livery provides pre-rental or pre-ride instruction that includes, but need not be limited to:

1. Operational characteristics of the vessel to be rented.
2. Safe vessel operation and vessel right-of-way.
3. The responsibility of the vessel operator for the safe and proper operation of the vessel.
4. Local characteristics of the waterway where the vessel will be operated."

Fla. Stat. §327.54(4)(b) also provides, "A livery may not knowingly lease, hire, or rent a personal watercraft to any person who has not received instruction in the safe handling of personal watercraft, in compliance with rules established by the commission pursuant to chapter 120." Section 327.54 obligates Defendant to make a legitimate inquiry into Plaintiff's abilities. Defendant is affirmatively charged with the duty to provide adequate instruction to PWC renters such as the plaintiff *prior to the commencement of any tour*.

Plaintiff was not given sufficient instruction by her tour guide concerning the operational characteristics of the jet-ski. See Straw Affidavit attached hereto as Exhibit B at paragraph 5. Plaintiff was not given instruction on safe vessel operation and vessel right-of-way. Straw Aff. at ¶6. Likewise, Plaintiff was not given instructions on the local characteristics of the waterway where the vessel was to be operated, St. Andrews Bay and certainly not advised about the dangerous characteristics of the Gulf of Mexico). Straw Aff. at ¶7, 9,10. Had she been given proper instruction and proper supervision Plaintiff would not have been injured on September 23, 2010. *Id.* at ¶ 8, 3-11. Plaintiff testified that before boarding her jet ski, she was given no instruction other than being handed the PWC check list by Victor Maya, an employee of Defendant. No one reviewed the check list with her or asked if she understood it. Straw Aff. at ¶3. Likewise, she was not given adequate verbal or demonstrative instruction after the PWC check list by the tour guide, Scott Corbin. Straw Aff. at ¶5,6,7, 8. During her deposition, when

asked to describe the training or instruction she received from Defendant Scott Corbin, Plaintiff stated:

> "He said, you know, you pull forward to go fast, let go of the brake – or grab the brake if you want to slow, press this button to backwards. If anything happens, you fall off, this is a kill switch. And that was pretty much it." (Straw Deposition at Page 32 attached hereto as Exhibit C ("Straw Depo."))

Plaintiff also testified that she was not prepared or instructed as to the high rates of speed, racing conditions and open seas the tour guide forced her to endure as compared to her initial expectations of the dolphin tour:

> "Q.    What were your expectations when you signed up for this dolphin tour?
>
> THE WITNESS:    That we were going to go and find a dolphin and tour Shell Beach and get off your jet ski and swim with them. And it sounded very idyllic and fun."
>
> …
>
> "Q.    And did you expect that you would be travelling at high rates of speed?
>
> A.    Not that high…
>
> THE WITNESS:  Not that fast, no.
>
> Q:    How fast did you expect to go on a jet ski when you signed up for the jet ski tour?
>
> A.    I didn't have a mile per hour.  I didn't know that these things went that fast, though.  My thing said we were going 50 miles an hour.  I didn't even know that was possible on a jet ski."  (Straw Depo. at pp. 130 – 131).

Plaintiff testified that she had to travel at high rates of speed in order to avoid losing the tour guide at sea:

> "Q.    So in order to keep up with the tour guide, you had to go at these rates of speed?
>
> A.    Right. There were times where he just completely disappeared from view. And all I could see was just the white there. But I was just doing my best to keep up with that.
>
> Q.    Were you scared?
>
> A.    I was scared." (Straw Depo. at pp. 135).

Aquatic Adventures has not alleged any specific facts which rebut Plaintiff's testimony that she did not receive adequate training and instruction prior to, or during, Defendant's custody of her as a participant in the ill-fated dolphin tour. Defendant has not produced any evidence to refute her testimony that Aquatic Adventures did not properly assess her skill level nor adequately supervise her, and Scott Corbin, in conducting the tour. No statement from Scott Corbin, a former employee of Defendant, exists in the record and his exact whereabouts are unknown to Plaintiff. As such, Plaintiff's testimony is undisputed and must be accepted as fact.

Instead Defendant cite to three disputed facts as evidence of its compliance with Fla. Stat. §§ 327.54, none of which conclusively show compliance with the law: (i) the information contained in the PWC check list, (ii) Scott Corbin's boater safety certificate, and (iii) a general report prepared by Defendant's expert.

### i) PWC Check List

While Ms. Straw does not dispute that she initialed the "check list", her unrebutted testimony on the record is that no one went over the form with her, asked her questions about it, asked her if she understood it, or confirmed that she had even read it. Straw Aff. at ¶3. Victor Maya, the Defendant employee who provided the release and PWC check list to Plaintiff on September 23, 2010, testified that he did not remember Plaintiff in particular. See page 17 of <u>Deposition of Victor Maya attached hereto as Exhibit D</u>. Maya did state that the Defendant's practice is to have putative PWC renters sign the release and PWC check list *before* he or she receives instruction or ever sets foot on a jet ski:

Q. "What I'm getting in front of you right now is a PWC Renter Orientation Checklist. Ms. Straw, the plaintiff, identified that as her signature yesterday. I would just ask you, is that the kind of form that you give to people at the hut but when they check in **before they get their instructions from the tour guide?**

A.    **Yes sir."**( Maya Depo. at pg. 65)

Thus, the record shows that the PWC check list is given to the putative renter *before* any explanation or instruction on the operational characteristics of the jet ski, safe vessel operation, right-of-way, responsibility for the safe and proper operation of the vessel, and local characteristics of the waterway. Plaintiff contends this practice violates Fla. Stat. §327.54(1)(e). Defendant does not read the PWC check list or otherwise verify that the renter understands "the safe handling of personal watercraft" as required by Fla. Stat. § 327.54(4)(b). Straw Aff. at 3.

Victor Maya, who gave Plaintiff the PWC check list, admitted that the check list was not proper "instruction.":

"Q.   Did you have anything to do with the – any sort of training or education of clients with jet skis last year.

**A.   No, sir.**

Q.   That was all left up to the tour guide operators?

A.   Yes sir. Most of them are experienced." (Maya Depo at pg. 21)(Emphasis added).

Plaintiff submits that said "instruction" is grossly inadequate, and does not comply with the relevant Florida personal watercraft safety laws.

Thus, the degree and quality of instruction actually provided to Plaintiff is a genuine issue of material fact since it is "material" to a legal element of her claim for negligence which might affect the outcome of the case, and "genuine" since the record when taken as a whole could lead a rational trier of fact to find in her favor that Defendant did not comply with Fla. Stat. §327.54. See Allen v. Tyson Foods, Inc. 121 F.3d 642, 646 (11th Cir. 1997)

### ii) Boater Safety Certificate

Additionally, Plaintiff disputes Defendant's contention that the tour guide, who according to Victor Maya would have provided instruction to Plaintiff, held a valid boater safety certificate. Defendant has not produced any affidavit or proof of same signed by Scott Corbin.

Assuming *arguendo* that Scott Corbin had valid boater safety certificate that alone would not constitute adherence to the law. The renter must have actually "*received instruction* in the safe handling of personal watercraft in compliance with rules established by the commission pursuant to chapter 120." Fla. Stat. §327.54(4)(b).  Whether Scott Corbin had a valid boater safety certificate at the time, does not address the issue of whether Plaintiff received adequate instruction from him. Whether Victor Maya had a certificate is irrelevant since he admitted that he did not instruct her, but merely gave her the PWC check list.   Here, Plaintiff's unrebutted testimony is that she was not given adequate instruction from either Maya or Corbin and that lack of instruction caused her accident. Straw Aff. at ¶3, 5, 6, 7, 8, 10.

Notably, both the PWC check list and the release are missing the signatures of the Aquatic Adventures' employee charged with verifying that the renter has signed and more importantly, *understood*, the release and PWC checklist. It appears from the record and Defendant's own admissions that Aquatic Adventures relies solely on the PWC check list to

"instruct" renters on the safe operation of the jet ski, without any other verbal or demonstrative instruction before the PWC check list is signed. Plaintiff submits that said "instruction" is grossly inadequate, and does not comply with the relevant Florida statutes and information that must be given to a PWC renter.[3]

Drawing all favorable inferences to the nonmoving party, a reasonable finder of fact could find that Defendant's practice of merely giving the renter a check list, without providing any instruction, and without ensuring that the renter understands the rather dense, fine print in the PWC check list, violates Fla. Stat. §§327.54(1)(e) and 327.54(4)(b).

### iii) Defense Expert Report

Lastly, Defendant points to its expert's conclusion that the PWC checklist "is approved by the state of Florida and provides information that complies with the statutes." (DE 21 at p. 13). This conclusion is not dispositive on the issue of whether the instruction, if any, that Plaintiff actually received was sufficient to comply with the law. A reasonable trier of fact could easily find that merely requiring Plaintiff to sign the PWC check list, as Plaintiff testified, does not constitute adequate instruction under Fla. Stat. §327.54. The expert does not state that Defendant's methods comply, rather he states that the PWC check list "provides information" consistent with the law. This contrasts with the statutory language, "a livery may not knowingly lease, hire, or rent a personal water craft to any person who has not *received instruction* in the safe handling of personal watercraft." Fla. Stat. §327.54(4)(b).

Plaintiff's own testimony, which is the only record evidence specifically germane as to what she was instructed to do is sufficient to rebut Defendant's evidence for purposes of summary judgment. Plaintiff testified that she was not adequately instructed. See *supra*. Even Victor Maya, who provided the check list to Plaintiff agreed that he typically does not provide any additional instruction to renters before they are required to sign. The other defense witnesses, including Jeff Jones and expert Kevin Breen, have no firsthand knowledge of the specific events and facts of the case.

To summarize, based on facts in the record a reasonable jury could find that the PWC check list is not a substitute for the instruction required by Florida law, and that Scott Corbin

---

[3] Florida Administrative law at Chapter 68D-36 provides the minimum standards for mandatory boater safety courses which include trainings regarding "wake-jumping concerns and reckless operation, causes and prevention of personal watercraft accidents..." (68D-36.104(2)(a)4-5) and the conduct required in boating accidents to report and "remain on the scene/rendering assistance." (68D-36.104(2)(g)1-3). None of which were observed by Scott Corbin.

likewise did not adequately instruct or supervise Plaintiff in violation of Florida law. The degree and quality of instruction and supervision actually provided to Plaintiff is a genuine issue of material fact since it is "material" to a legal element of her claim for negligence which might affect the outcome of the case, and "genuine" since the record when taken as a whole could lead a rational trier of fact to find in her favor that Defendant did not comply with Fla. Stat. §327.54. See Allen v. Tyson Foods, Inc. 121 F.3d 642, 646 (11th Cir. 1997). Therefore summary judgment in favor of Defendant must be DENIED.

### B.     FLA. STAT. §327.30 – FAILURE TO RENDER AID

Fla. Stat. § 327.30 specifically imposes an affirmative duty on Defendant, as follows:

"(1)   It is the duty of the operator of a vessel involved in a collision, accident, or other casualty… *to render to other persons affected…such assistance as is practicable and necessary in order to save them from or minimize any danger caused by the collision, accident, or other casualty*
...
(2) In the case of collision, accident, or other casualty …capsizing, collision with another vessel or object, sinking, personal injury requiring medical treatment beyond immediate first aid …*the operator shall without delay, by the quickest means available give notice of the accident* to one of the following agencies
…
(5)   It is unlawful for a person operating a vessel involved in an accident or injury *to leave the scene of the accident or injury without giving all possible aid to all persons involved*…and subsequently complying with and notifying the appropriate law enforcement official as required under this section." (Emphasis added).

On September 23, 2010, CHANDRA STRAW was rendered unconscious during the dolphin sightseeing tour led by Defendant. Straw Aff. at ¶11. Defendant refused to provide aid or assistance to her in blatant violation of §327.30. Id at ¶ 12-14. Plaintiff testified that she was chasing after the tour guide when she hit a large three to five foot wave which she described "as a wall." Straw Depo. at p. 58. Plaintiff described her condition while at sea as follows:

> "Q.    Okay. After your tailbone hits the seat, or at least that's what you think is your tailbone lands on the seat of the jet ski, what happened next?
>
> A.    That felt like just this big explosion and my head just saw stars. And then I just don't remember anything until I woke up in the water."
> (Straw Depo. at p. 59. )

Ms. Straw later described the tour guide's reactions to her injury:

"I screamed, 'I can't breathe.' And he said, 'Just relax, kick your feet, you'll be okay.' At that point I said, 'I can't move my feet. I think you'll have to call somebody.' And he said, 'You just hyperextended your back, just relax, breathe, you'll be fine.' And at that point I started crying. I realized that I lost my shoes and the life jacket wasn't holding me up. And he just started yelling at me that I had to start kicking my feet, that they couldn't leave me out there." (Straw Depo. at p. 60-61).

Instead of calling for help at sea as required by Florida law and by Defendant's own policies, Defendant then forced Plaintiff to ride her own jet ski back to the dock while suffering from injuries so severe that she was unable to sit up on the jet ski. See Straw Aff. at P. 13, and <u>Report of Dr. Kewalramani attached as Exhibit 1 to Straw Affidavit</u>.

At the dock, Scott Corbin instructed Plaintiff to lie down:

"And he just told me that I had to get over the bench, as soon as I laid down, everything would be fine. And we got over to the bench. I told him he needed to call somebody. He said, 'Just relax, you hyperextended your back. You'll be fine in a minute. So just lay down, take your time.' And he disappeared. And I thought he was going to go do – get help or something. But then he hopped in his Jeep and sped away and left us there.

Q. Now you saw him get in his Jeep?

A. Yes.

Q. And do you remember anything about the Jeep?

A. Black Jeep with a tire cover with a skull and crossbone Jolly Roger-type big thing on it."

(Straw Depo at p. 66-67). In short, the record shows that Defendant wholly failed to render aid and assistance to Plaintiff, to call for help, to give notice to authorities and to remain on the scene and render aid as required by Fla. Stat. §327.30. Plaintiff's testimony is unrebutted that Defendant did not call for help, did not render aid at sea or once on the dock, did not report the accident as required by law, and fled the scene without giving <u>any</u> aid to Plaintiff.

Defendant cannot and does not dispute that the tour guide refused to call for help after Plaintiff was ejected from the jet ski, forced to get back on while severely injured, and that he fled the scene without rendering aid, a third degree felony.[4] Instead, Defendant argues that

---

[4] "Any person who violates this subsection with respect to an accident resulting in personal injury commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084."

Plaintiff cannot demonstrate that she required more than first aid. This position is patently wrong.

Plaintiff stated that she was not injured prior to September 23, 2011. Straw Aff. at ¶17. She testified that Defendant did not call for help even after she begged him to do so because she was in so much pain. Instead, Defendant cruelly forced her to reboard the jet ski and navigate the vessel in a prostrate position back to the dock. See *supra*, Aff. at ¶13. Defendant admits that no report was ever made as required by Fla. Sta. 327.30, even though it is their policy to do so. The President of Aquatic Adventures, Jeff Jones, testified during his deposition that:

"A. We have to call the Coast Guard if it's anything over minor first aid. By law, we have to report all incidents." (Deposition of Jeff Jones at p. 83 attached hereto as Exhibit E ).

Further, James Vaught, general manager for Aquatic Adventures testified that:

"A. If anything other than minor first aid, they need to call Florida marine patrol." (Deposition of James Vaught at p. 48 attached hereto as Exhibit F).

Mr. Vaught also testified over objection as to Aquatic Adventure's required procedure when a customer is knocked unconscious:

"Q. So for an incident where the accident was so severe someone was knocked unconscious, can you describe as to what the general protocol would be with Aquatic Adventures? …

THE WITNESS: If someone was knocked unconscious, I would probably have them life-flighted out of the bay.

Q. Life-flighted?

A. That's right.

Q. If you can just run me through that whole process.

A. That's when you call a Coast Guard and they send a helicopter out here."

Vaught Depo. at p. 48-49.

Defendant's contention that Plaintiff must show "exactly what Defendant Aquatic Adventures should have done in the incident" is incorrect. Fla. Stat. §327.30 spells out what Defendant is affirmatively required to do. Likewise, there is no record evidence to show that Defendant did *anything* to fulfill its duties to rescue and render aid to Plaintiff. Defendant's own employees testified as to what could have been done, and *what should have been done* under Defendant's policy. Yet, nothing was done. Thus, Defendant was negligent per se under Fla. Stat. §327.30.

Indeed a reasonable person could find that Defendant was grossly negligent in forcing Ms. Straw to reboard the jet ski while injured and drive it back to the shore, rather than calling for help. Since Defendant has failed to produce any evidence refuting Plaintiff's statements, the Court must accept Ms. Straw's affidavit and testimony as true.

In sum, the record as to whether Aquatic Adventures exercised reasonable care in fulfilling its duties as required by Fla. Stat. §327.30 is devoid of any evidence in support of Defendant's position. Therefore, Aquatic Adventure's Motion for Summary Judgment must be DENIED.

### III. RELEASE IS NOT VALID BECAUSE AQUATIC ADVENTURES RECKLESSLY DEVIATED FROM THE STANDARD DOLPHIN TOUR AND ITS OWN SAFETY STANDARDS

The release is invalid to the extent that it did not cover the actual events that transpired on the date of the tour and Defendant's reckless acts. Plaintiff has shown sufficient facts indicating that Defendant deviated from the tranquil, family-oriented dolphin tour that she signed up for and instead took her on a high speed tour in the open ocean. Plaintiff did not intend to go on a "high speed race" or to "jump waves" when she signed the release.[5] See Straw Affidavit at ¶ 10. The dolphin tour was to take place solely within the confines of the St. Andrews Bay. During his deposition, Jeff Jones, testified that it was against Aquatic Adventure's policy to bring tours out into the Gulf of Mexico.

"Q. So you don't take tours down there normally?

A. They will take them the length, but they don't go out. We don't allow this stuff to go out in the Gulf. We don't allow our pontoon boat rentals to go out in the Gulf. We just don't." (Jones Depo. at p. 99)

Later, in his deposition, Jeff Jones stated as follows:

---

[5] The PWC Check list specifically prohibits jumping waves and wakes. See also fn.3.

"Q. So other than reading the complaint, you don't know where my client was taken?

A. As far as on the tour or where –

Q. Yeah.

A. - the incident supposedly happened?

Q. Taken on the tour.

A. No.

Q. You don't know because you never talked to Scott Corbin about it?

A. I never talked to – no, I never talked to Scott about this incident at all.

Q. So it's possible that he took them out into the Gulf?

A. That would have been against policy.

Q. Against your policy right?

A. Yeah." (Jones Depo. at p. 124).

Also, Aquatic Adventures' website page describes the tour Plaintiff signed up for as very different from the one she experienced:

"Our Waverunner tour is a very popular way to see the dolphins and other plentiful marine life while enjoying 2 hours of waverunner riding. *The short 8 minute ride to Shell Island allows extra time to seek out the dolphins and enjoy the beaches and waters of St. Andrew[s] Bay. Our Waverunners are easy to maneuver and fun to ride.* Dolphin encounters, fabulous shelling and 20+ miles of coastal touring of remote beaches around beautiful Shell Island and St. Andrews Bay is as good as it gets! Leave from the calm waters of Grand Lagoon…Yes, you really can swim with the dolphins!" (Emphasis added).

(See copy of Defendant's Website attached hereto as Exhibit G).

Mr. Jones also described the water conditions in St. Andrew's Bay during his deposition:

"A. We really don't get waves in the bay. We get what they call a chop.

Q. Uh-huh.

A. So on a ski it's a chop like this (indicating). So we get a chop. You don't really get waves in the bay like you do in the Gulf."

(Jones Depo at p. 113)

James Vaught confirmed this in his deposition testimony:

"Q. What's the wave conditions typically in St. Andrews Bay?

A. There would never be a wave."(Vaught Depo at p. 79)

Instead of staying in the serene St. Andrews Bay, Plaintiff was taken on a dangerous high speed race into the Gulf of Mexico and subjected to dangerous high speeds and marine conditions. See Straw Affidavit at ¶4,10. According to the Plaintiff's testimony she hit a three to five foot wave which ultimately rendered her unconscious. See *supra*. James Vaught testified during his deposition that bringing jet-skis into the Gulf of Mexico was a dangerous activity.

"Q. Have you ever known of a tour guide that has worked for Aquatic to deviate from the recommended standard trip –

A. No.

Q. - in St. Andrews Bay?

A. No.

Q. Why do you recommend that the dolphin tours stay in St. Andrews Bay?

**A.** It's just the way it's been. I have no real recommendations. **Anything in the open waters, Gulf of Mexico, could cause danger.**"

(Vaught Depo. at p. 38)(Emphasis added).

Given the factual set of circumstances, Aquatic Adventures release is invalid since the tour Plaintiff received was not the one she bargained for, and she could not knowingly consent to the reckless acts of Defendant in taking her out into the dangerous Gulf waters. This argument dovetails with Plaintiff central argument that the release is unenforceable because of Defendant's statutory violations. See also Restatement (Second) of Contracts §195 (1979)("(1) A term exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy…(2)(c) A term exempting a party from tort liability for harm caused negligently is unenforceable on grounds of public policy if…the other party is similarly a member of a class protected against the class to which the first party belongs.").

The actual high-speed tour which took place in the Gulf of Mexico was so different than the promised St. Andrews Bay tour as to render the release invalid. Further, bringing Plaintiff into the Gulf of Mexico was a reckless act on behalf Aquatic Adventures that put her in severe danger as a first-time jet ski rider. Plaintiff could not knowingly waive or release any claims

from the accident which occurred in the Gulf of Mexico. Put simply, Defendant took Plaintiff on a completely different type of tour than what she had contemplated at the time she signed the waiver. As such, she could not prospectively waive her rights concerning the "tour" she experienced. The release is not applicable to the series of events which proximately caused her injuries (*e.g.* being hit by a wave while outside of St. Andrews Bay, being forced to drive the jet ski to shore laying prostrate after being knocked unconscious, and being left at the dock unattended).

Plaintiff submits that sufficient facts are present in the record to overcome Defendant's Motion on all counts of general negligence and negligence per se based on statutory violations of Florida law. As such, defendant's Motion for Summary Judgment must be denied.

## IV.   CONCLUSION

Defendant has not met its initial burden of showing that there are no genuine issues of material fact that should be decided at trial. Plaintiff, in any event, has surpassed her burden of refuting Defendant's factual allegations. Plaintiff's testimony is the only evidence in the record about what instruction was given and what transpired immediately prior to, during and after the subject accident. Defendant's supporting exhibits consist only of general opinions which do not refute Plaintiff's specific testimony. The Affidavit of Jeff Jones recites the general policies and procedures of Defendant, but he admittedly has no firsthand knowledge about the September 23, 2010 accident. ("Q.   Before February 2011, had you ever heard anything about there being a jet-ski accident? A.   No." )(Jones Depo. at p. 76). Likewise, as to expert Kevin C. Breen's report of general observations about Defendant's general policies.

The record shows that Defendant failed to meet the reasonable duty of care owed to Plaintiff in ensuring that she was sufficiently informed as to the safe operation of the personal watercraft ("PWC") and that she possessed sufficient knowledge and ability to operate the PWC. Fla. Stat. § 327.54.   Defendant failed to properly instruct Plaintiff. Fla. Stat. §§ 327.54(1)(e). Defendant failed to render aid, call for help, and file accident reports. Fla. Stat. §324.30. Plaintiff is a member of the class of persons (PWC renters) the vessel safety statutes governing rental of personal watercraft were enacted to protect, and Plaintiff's injuries were proximately caused by Defendant's violation of said statutes.

Plaintiff has alleged sufficient facts in the record to show that Defendant failed to meet its statutory obligations. In sum, the release is unenforceable because Defendant violated Florida

statutes enacted to protect her from the type of harm she suffered at the hands of Defendant. Thus, Plaintiff submits that the record as a whole presents a genuine issue for trial as to the enforceability and validity of the release.

For the foregoing reasons, Plaintiff respectfully submits that Defendant's Motion for Summary Judgment must be DENIED.

Respectfully submitted,

_s/Sasha M. Sampaio_
SASHA M. SAMPAIO
Florida Bar No. 24677
**THE SAMPAIO LAW FIRM, P.A**
44 W. Flagler St., Suite 1425
Miami, Florida 33130
Telephone: (305) 350-7727
Email: sasha@sampaiolaw.com


**LAW OFFICE OF JON G. BETHUNE, L.L.C.**
JON G. BETHUNE
Louisiana Bar #30221
4701 Tchoupitoulas Street, Suite B
New Orleans, Louisiana 70115
Telephone:    (504) 218-8570
Facsimile:    (504) 267-4893
Email: jbethune@bethune-law.com

*ATTORNEYS FOR CHANDRA STRAW*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the was served upon all counsel of record by filing same via CM/ECF and causing a copy to be served on this 12th day of October 2011:

    Gregory K. Rettig
    Fuller, Johnson, Kehoe, Horky & Rettig, LLC
    3298 Summit Blvd., Suite 11
    Pensacola, FL 32503
    Email: gkr@ins-defense.com

    *Counsel for Defendant,*
    *Aquatic Adventures Management Group, Inc.*


                                             **s/Sasha M. Sampaio**
                                             SASHA M. SAMPAIO